IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| LAURA WONDERCHECK,                        ) | |
| )                                         | |
| Plaintiff,                                ) | |
| )                                         | |
| v.                                        ) | |
| )                                         | Civil Action No. 1:19-cv-00640-LY |
| MAXIM HEALTHCARE SERVICES,                ) | |
| INC.,                                     ) | |
| )                                         | |
| Defendant.                                ) | |

**DEFENDANT MAXIM HEALTHCARE SERVICES, INC.'S
<u>PROPOSED STIPULATED FACTS</u>**

Pursuant to Local Rule CV-16(e)(3), Defendant Maxim Healthcare Services, Inc. proposes the attached list of stipulated facts:[1]

Dated: November 6, 2020

Respectfully submitted,

*/s/ Lindsay A. Hedrick*
Lindsay A. Hedrick
Texas State Bar No. 24067655
Victoria L. Bliss
Texas State Bar No. 24105479
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Phone: (214) 220-3939
Fax: (214) 969-5100
E-mail: lahedrick@jonesday.com
         vbliss@jonesday.com

*Attorneys for Defendant Maxim Healthcare Services, Inc.*

---

[1] Because this list of proposed stipulated facts is being filed before trial commences and trial may be postponed due to the COVID-19 pandemic, Maxim seeks the right to supplement, amend, modify, substitute, or withdraw any of these proposed stipulated facts before trial.

1

## **CERTIFICATE OF SERVICE**

  I hereby certify that on November 6, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send electronic notice to all counsel of record.

               */s/ Lindsay A. Hedrick*
               Lindsay A. Hedrick

## PROPOSED STIPULATED FACTS

1. Maxim is a company that provides, among other services, healthcare staffing to clients nationwide, including to U.S. government agencies such as Immigration and Customs Enforcement (ICE), an agency under the Department of Homeland Security (DHS).

2. ICE contracted with Maxim to provide certain healthcare staffing to the South Texas Family Residential Center in Dilley, Texas, which houses detained migrant women and children in ICE custody.

3. Maxim hired Ms. Wondercheck to work as a pharmacy technician at the South Texas Family Residential Center in Dilley, Texas on July 13, 2015.

4. Throughout Wondercheck's employment with Maxim, the ICE immigrant detention center in Dilley, Texas housed women and children.

5. Maxim provided on-site medical staffing services at the ICE detention facility in Dilley, Texas pursuant to contracts with ICE.

6. U.S. taxpayer money effectively paid for Maxim's services under the contract.

7. ICE could terminate the contract if Maxim did not comply with the contact.

8. ICE could request the removal of Maxim personnel from the contract and bar Maxim personnel from the detention facility.

9. Maxim had a Code of Conduct that was in effect in 2016.

10. The Code of Conduct in effect in 2016 states: "All Company employees and Contractors have a duty to report any suspected violation of law, this Code, or Company policies and procedures to Maxim."

11. Specifically, the Code of Conduct requires employees to "report any action or situation reasonably believed to be inappropriate, fraudulent, illegal, or inconsistent with [Maxim's] policies."

12. The Code of Conduct warns employees that "[f]ailure to report suspected violations of law, this Code, or Company policies and procedures violates this Code and may lead to corrective action up to and including termination."

13. The Code of Conduct explicitly states that it "is not a detailed rule book, nor is it all inclusive. Consequently, the Company relies on the good judgment and values of its employees and Contractors to implement the intent of this Code when neither this Code nor Company policies and procedures address a specific situation."

14. Maxim had a Caregiver Employee Handbook that was in effect in 2016.

15. The Employee Handbook in effect in 2016 states: "We expect total compliance with the federal False Claims Act and other federal and state laws that prohibit submission of a knowingly false of fraudulent claim for payment to the United States or state government and knowingly making or using a false statement to get a claim paid or approved."

16. The Employee Handbook warns employees that "[d]isciplinary action may be taken toward employees who fail to comply with our policies and procedures, federal and state laws, or for

those who have otherwise engaged in conduct that has the potential to impair our status as a reliable, honest, and trustworthy healthcare provider."

17. The Employee Handbook also states: "You are required to report any wrongdoing you are aware of to your manager, the Chief Compliance Officer, the Compliance and Ethics or Human Resources Departments, or to our anonymous Integrity Hotline. Reporting actual or potential non-compliance is a condition of employment."

18. Maxim employees could report fraud to their manager, the Chief Compliance Officer, the Compliance and Ethics Department, the Human Resources Department, or the anonymous Integrity Hotline.

19. Mr. Wondercheck worked in the ICE detention center pharmacy with other Maxim employees and contractors. She worked with fellow pharmacy technician Brad Switter. She also worked with pharmacists An Nguyen and Tho Nguyen.

20. Under Maxim's job description for the pharmacy technician role, Ms. Wondercheck's duties included preparing and dispensing medication orders, ordering medication supplies, and checking medications received against orders placed.

21. Under the government's position description for the pharmacy technician position, Ms. Wondercheck was required to possess certain "Attributes and Professional Qualities," including integrity and honesty.

22. Maxim trained Ms. Wondercheck on its policies and on compliance expectations.

23. Ms. Wondercheck was required to certify that she had read the Maxim Code of Conduct each year.

24. Ms. Wondercheck also underwent compliance training. This training covered topics such as fraud, abuse, waste, the False Claims Act, the Integrity Hotline, and Maxim's Code of Conduct.

25. There was a poster prominently displayed in the medical building (where the pharmacy is located) of the ICE detention center that said "Employees should report any action or situation reasonably believed to be inappropriate, fraudulent, illegal, or inconsistent with our policies."

26. Maxim issued Ms. Wondercheck a Corrective Action Form for an Initial Warning to Wondercheck on June 22, 2016 for Violation of Company Policy. Specifically, the Corrective Action Form states that Ms. Wondercheck "recorded out of range min/max temperatures on eight separate occasions" and "failed to take necessary actions outlined in the policy (LOP 00-42) after recording the out of range temperatures. The Corrective Action Form, which Ms. Wondercheck signed, warned Ms. Wondercheck that "[u]nsatisfactory job performance in the future may result in additional corrective action up to and including termination of employment."

27. On June 9, 2016, an anonymous caller reported to Maxim's Integrity Hotline that for about six months, An Nguyen had been using his budget to order pharmaceuticals for himself and his family. The caller stated that he purchased Minoxidil, a prescription medication to promote hair growth for men. The caller also reported that Nguyen napped in the storage room for the first two hours of each day and instructed pharmacy technicians to fill prescriptions on their own during this time.

28. Ms. Wondercheck was the anonymous caller.

29. Maxim suspended An Nguyen on June 20, 2016.

30. Maxim interviewed Ms. Wondercheck. In the interview, Ms. Wondercheck told Maxim she had observed that medications were being ordered that were not for the ICE detainees' use. She knew that at least one of the medications, Minoxidil, could not be for detainees at ICE Dilley because it was only prescribed to men.

31. On June 21, 2016, Maxim terminated An Nguyen.

32. Mr. Switter did not report An Nguyen's fraud on the government.

33. On June 28, 2016, Linda Applewhite, an ICE Office of Acquisition Management Contracting Officer, notified Maxim that ICE had "made a determination that the individuals currently assigned to two of the Pharmacy Technician positions at the Family Residential Facility, Dilley, fail to meet the Attributes and Professional Qualities specified in the referenced Position Description." Ms. Applewhite requested that Maxim remove Ms. Wondercheck and Mr. Switter from the contract.

34. On June 28, 2016, Maxim suspended Ms. Wondercheck and Mr. Switter.

35. On July 11, 2016, Maxim terminated Ms. Wondercheck and Mr. Switter.

36. Maxim called Mr. Wondercheck to notify her of her termination and later sent her a Corrective Action Form reflecting her termination. The reason given for her termination on the Corrective Action Form was that, "[i]n direct violation of Maxim's Code of Conduct and Compliance training, employee failed to timely report to Maxim and Government leadership knowledge of a fellow Maxim contractor who was diverting medication and engaged in fraudulent conduct."